UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

MEDICAL COLLEGE OF WISCONSIN
AFFILIATE HOSPITALS, INC.,

        Plaintiff,

        v.                                    Case No. 14-C-1477

UNITED STATES OF AMERICA,

        Defendant.

---

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT (DOC. 19)
AND DENYING MOTION FOR SUMMARY JUDGMENT (DOC. 22)

The Internal Revenue Code requires the Internal Revenue Service to pay interest on taxpayer overpayments at one rate for corporations and a higher, alternative rate for noncorporations. The Medical College of Wisconsin Affiliated Hospitals, Inc. overpaid its Federal Insurance Contributions Act (FICA) tax and received a tax refund with interest calculated at the rate for corporations. It filed this lawsuit to recover additional interest at the higher, noncorporate rate. Cross-motions for summary judgment are now before the court.

Summary judgment is proper if the depositions, documents or electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers or other materials show that there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of demonstrating it is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend

each element of its cause of action, showing that there is a genuine issue for trial. *Id.* at 322-24. In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). Because the parties in this case have filed cross-motions for summary judgment, many facts are not contested. When no genuine issue of material fact exists, the sole question is whether the moving party is entitled to judgment as a matter of law. *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996).

The Hospital is, and was at all times relevant, organized and operated as a nonstock, nonprofit corporation under Wisconsin law. (Doc. 18, ¶ 1.) Further, the Hospital is, and was at all times relevant, a corporation exempt from federal income tax under 26 U.S.C., i.e., Internal Revenue Code (IRC), § 501(a) and (c)(3). (Doc. 18, ¶ 2.) The Hospital is, and was at all times relevant, a corporation for purposes of qualifying as a tax-exempt organization under § 501(a), (c)(3). (Doc. 18, ¶ 3.)

The Hospital filed a Form 990 for each of the relevant periods respecting its tax-exempt operations. For years after 2007, Form 990 asked about the form of the organization, and on page one of the Form 990 for years after 2007, the Hospital checked the box stating that its form of organization was "corporation." (Doc. 18, ¶ 4.)

Generally, although the Hospital is exempt from paying federal income tax, it is not exempt from paying FICA employment taxes. (Doc. 20, ¶ 1.) Prior to March 2, 2010, the IRS and various taxpayers disagreed whether medical residents were exempted from the FICA requirements for tax periods prior to April 1, 2005. (Doc. 20, ¶ 2.) The source of the dispute revolved around the "student exception" to FICA. (Doc. 20, ¶ 3.) On March 2,

2010, the IRS accepted the position that medical residents were students excepted from FICA taxes for tax periods ending before April 1, 2005. (Doc. 18, ¶ 6.)

Based on that IRS determination, the Hospital received refunds of overpaid FICA tax plus interest, for twenty-nine tax quarters. (Doc. 18, ¶ 7.) The IRS refunded to the Hospital approximately $14 million in overpaid employer-portion FICA tax plus approximately $13 million in interest on that tax. (Doc. 18, ¶ 8.) However, in 2013 the IRS formally notified the Hospital that the IRS had overpaid the interest refunded and demanded repayment of approximately $6.7 million. (Doc. 18, ¶ 9.) The IRS viewed the approximately $6.7 million as equal to the difference between the statutory interest rates for a corporation versus a noncorporation under IRC § 6621(a)(1). (Doc. 18, ¶ 10.) The Hospital repaid the approximately $6.7 million in interest but said it was doing so under protest. (Doc. 18, ¶ 12.) The Hospital then claimed a refund for the approximately $6.7 million in interest (plus interest thereon) (Doc. 18, ¶ 13) and now sues to recover it.

Under § 6621(a)(1) noncorporate taxpayers receive interest on tax refunds at a higher rate than corporate taxpayers receive. Hence, the question here is whether for purposes of IRC § 6621(a)(1) a § 501(c)(3) nonprofit is considered to be a corporation. When the pending summary judgment motions were briefed initially, the identical legal issue had been decided in the government's favor by district courts in New York and Michigan and presented on appeal to the Second and Sixth Circuits. Both circuit courts have since issued their decisions affirming the judgments in the government's favor.

This court has fully considered the parties' arguments here, the statutory and regulatory language cited, the opinions of the two district courts, the Second Circuit's *Maimonides Medical Center v. United States,* 809 F.3d 85 (2d Cir. 2015), the Sixth Circuit's

3

*United States v. Detroit Medical Center*, No. 15-1279, ___ F.3d ___, 2016 WL 4376431 (6th Cir. Aug. 17, 2016), the Court of Federal Claims' *Eaglehawk Carbon, Inc. v. United States*, 122 Fed. Cl. 209 (2015), and the Tax Court's *Garwood Irrigation Co. v. Commissioner of Internal Revenue*, 126 T.C. 233 (2006). Because this court's determination is in accord with the decisions of the Second and Sixth Circuit, there is no need to add a lengthy opinion to the mix. In short, this court rejects the Hospital's argument that the parenthetical in the "flush language" of § 6621[1] incorporates the "C corporation" limitation of (c)(3)(A), notwithstanding that the flush language cites only "(c)(3)." The flush-language parenthetical more naturally refers only to the definition of

---

[1] The pertinent part of IRC § 6621 reads:

(a) General rule—
    (1) Overpayment rate.—The overpayment rate established under this section shall be the sum of—
        (A) the Federal short-term rate determined under subsection (b), plus
        (B) 3 percentage points (2 percentage points in the case of a corporation).
To the extent that an overpayment of tax by a corporation for any taxable period (as defined in subsection (c)(3), applied by substituting "overpayment" for "underpayment") exceeds $10,000, subparagraph (B) shall be applied by substituting "0.5 percentage point" for "2 percentage points."
    (2) Underpayment rate.—The underpayment rate established under this section shall be the sum of—
        (A) the Federal short-term rate determined under subsection (b), plus
        (B) 3 percentage points.

. . . .

(c) Increase in underpayment rate for large corporate underpayments.—
    (1) In general.—For purposes of determining the amount of interest payable under section 6601 on any large corporate underpayment for periods after the applicable date, paragraph (2) of subsection (a) shall be applied by substituting "5 percentage points" for "3 percentage points".
. . . .
    (3) Large corporate underpayment.—For purposes of this subsection—
    (A) In general.—The term "large corporate underpayment" means any underpayment of a tax by a C corporation for any taxable period if the amount of such underpayment for such period exceeds $100,000.
    (B) Taxable period.—For purposes of subparagraph (A), the term "taxable period" means—
        (i) in the case of any tax imposed by subtitle A, the taxable year, or
        (ii) in the case of any other tax, the period to which the underpayment relates.

4

"taxable period" in (c)(3)(B), especially as the flush language does not use the defined term "large corporate underpayment" (or, as possibly adjusted, "large corporate overpayment"). And this court is unpersuaded that perfect symmetry between the overpayment and underpayment provisions was intended by Congress. Instead, it appears that where Congress intended to use "C corporation" in § 6621 it did so and where it used only "corporation" it included all corporations—C, S, and § 501(c)(3) together. Although the Hospital's policy arguments for a higher interest rate for refunds to nonprofits have merit, those arguments are better aimed at Congress. Here the text of the statute expresses Congress's intent. For these reasons and the reasons discussed by the Second Circuit and Sixth Circuit in *Maimonides* and *Detroit Medical College*.

IT IS ORDERED that the United States' motion for summary judgment (Doc. 19) is granted and the Hospital's motion for summary judgment (Doc. 22) is denied.[2]

Dated at Milwaukee, Wisconsin, this 14th day of September, 2016.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE

---

[2]Although the court views with skepticism the government's argument that the Hospital should be considered a C corporation in any event, no holding based on that argument need be made. Nor does the court need to address the Hospital's arguments regarding the validity of or deference due various regulations, as the text of the statute controls the outcome here. To the extent that *Garwood*, 126 T.C. 233, found that the flush language incorporated the reference to C corporations, this court disagrees.

5